| | | |
|---|---|---|
| OFFICE OF THE ATTORNEY GENERAL AND THE OFFICE OF IMMIGRATION AND NATURALIZATION OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) ) ) ) ) | APPEAL NOS. 92-005, 92-006, and 92-007 (Consolidated) CIVIL ACTION NOS. 92-184, 92-189, and 92-200 |
| Petitioners/Appellees, | ) ) | |
| vs. | ) ) | OPINION |
| JESUS RIVERA, RONALDO MORAN, AND ARSENIO BLANCIA, | ) ) ) | |
| Respondents/Appellants. | ) ) | |

Argued December 7, 1992

Counsel for Respondents/Appellants:  V.K. SAWHNEY
HILL & SAWHNEY
ATTORNEYS AT LAW
P. O. Box 917
Saipan, MP  96950

Counsel for Petitioners/Appellees:  OFFICE OF THE ATTORNEY
GENERAL
John R. Dowell
Assistant Attorney
General
Capitol Hill
Saipan, MP  96950

BEFORE:  DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

## FACTS

This is a consolidated appeal from three separate deportation orders. The appellants (hereafter workers) are citizens of the Philippines who entered the Commonwealth as tourists.[1] While here, they were employed by Frank P. Villagomez, a CNMI resident. They stayed past the time allowed under their tourist visas. Agents of the CNMI Immigration and Naturalization Office apprehended the workers and sought their deportation. The Superior Court issued its Order of Deportation for each of the three workers on April 15, 1992.

The workers seek to set aside the deportation orders.

Frank P. Villagomez, dba FPV Enterprises, recruited the workers in the Philippines as contract workers. He asked them to enter the Commonwealth on tourist visas and assured them that their employment papers would be processed while they were in the Commonwealth. He never filed the work permit applications that he promised.

CNMI Immigration agents apprehended the workers on February 25, 1992. On February 28, Immigration and Naturalization Office filed petitions for deportation against them.

On March 17, the workers filed labor complaints against Frank P. Villagomez with the Division of Labor of the Department of

---

[1]Jesus Rivera entered the Commonwealth on September 22, 1990. His entry permit expired on October 21, 1990. Ronaldo Moran was authorized to enter the Commonwealth on April 26, 1991. His entry permit expired on May 26, 1991. Arsenio Blancia entered the Commonwealth on January 16, 1992. His entry permit expired on February 15, 1992.

Commerce and Labor (hereafter Division of Labor). They alleged unpaid regular and overtime wages, illegal wage deductions, breach of contract and fraudulent misrepresentation, among others.

On April 13, the Superior Court denied the motion of the workers for a continuance and/or dismissal while their labor complaint was pending, and ordered their immediate deportation. The order further stated that the workers would be allowed to return for brief visits, not to exceed a total of 90 days in the next year, to prosecute their labor complaints.

On April 14, we granted a temporary stay of the deportation order pending a hearing on whether a stay pending appeal should be granted.

After the deportation order, but during the stay, the workers filed motions in the Division of Labor requesting issuance of temporary work permits. They also sought a declaration from the Division of Labor that it had jurisdiction over their claims for unpaid minimum and overtime wages. The Division of Labor heard the motions and issued its Findings of Fact, Conclusions of Law and Order on April 29, 1992.

In its April 29 Order, the Division of Labor found that the workers' claims under the CNMI Minimum Wage and Hour Act could be litigated administratively. However, it denied the request for temporary work permits. The Division of Labor ordered the workers' administrative wage claim to be set for hearing no later than 30 days from April 29.

On May 18, we issued an order staying the deportation orders pending either (1) the Division of Labor's decision in the workers' labor complaints, or (2) our opinion regarding the workers' appeal, whichever occurs first.

On October 23, 1992, the Division of Labor issued its Labor Order ruling in favor of the workers, by virtue of the default of Frank P. Villagomez, on their wage claim, plus liquidated damages, costs, attorney's fees, and the possibility of a fine if payment is not timely made.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

1. Whether the Superior Court erred in holding that it had jurisdiction while an administrative case was pending before the Department of Commerce and Labor.

The issue of jurisdiction is a question of law and subject to de novo review. <u>Aquino v. Tinian Cockfighting Board</u>, No. 91-012 (N.M.I. Sept. 25, 1992).

2. Whether the immediate deportation of the workers will violate their rights to due process and equal protection of the laws as guaranteed by the U.S. Constitution and the NMI Constitution.

This is a constitutional question and is subject to de novo review. <u>Manglona v. CNMI Civil Service Commission</u>, No. 91-013 (N.M.I. Sept. 18, 1992).

## ANALYSIS

The Superior Court, in its April 15, 1992, Order of

441

Deportation, made the following findings for each of the workers:

> 1. ...Respondent is an alien who originally entered the Commonwealth on a tourist entry permit and who has remained in the Commonwealth without lawful authority after the expiration of his tourist permit.
> 2. ...Respondent engaged in employment both during his lawful presence in the Commonwealth as a tourist and after the expiration of his entry permit.

Order at 1-2.

The trial court concluded that each worker was deportable "for overstaying his entry permit and remaining in the Commonwealth thereafter without lawful authority." Order at 2. The basis for the deportation had nothing to do with the employment of the workers. The trial court ordered the respondents "to depart the Commonwealth immediately." Order at 2.

In its April 29, 1992, Order, the Division of Labor found that the workers were tourists and not nonresident workers. However, it concluded that the Division of Labor had jurisdiction over the workers' claim for wages under 4 CMC §§ 9211 et seq., the Minimum Wage and Hour Act.

## Jurisdiction

█The Superior Court had jurisdiction over the deportation matter even if there was a wage claim pending before the Division of Labor.

The filing of the wage claim in the Division of Labor did not divest jurisdiction of the trial court over the deportation matter. They are different proceedings with different remedies being

sought. See <u>Office of the Attorney General v. Deala</u>, No. 91-015 (N.M.I. April 24, 1992).

The workers cite the case of <u>Office of the Attorney General v. Jimenez</u>, 3 CR 827 (D.N.M.I. App.Div. 1989), and <u>Wacangan v. Arriola</u>, 3 CR 556 (D.N.M.I. App.Div. 1988), in support of their argument that the Superior Court lacked jurisdiction while their wage claims were pending in the Division of Labor.

We do not agree that the <u>Jimenez</u> case can be so broadly interpreted. That case stands for the proposition that the trial court lacks jurisdiction to entertain a deportation matter <u>based on a termination of the employee's employment status</u>. The appellate court in <u>Jimenez</u> concluded that the Division of Labor first had to make a determination, pursuant to 3 CMC §§ 4411 <u>et seq.</u>, the Nonresident Workers Act, that an existing employment contract had been canceled. Without such a determination, the trial court could not independently order the deportation of employees on such basis. The basis for deportation in the <u>Jimenez</u> case depended on the outcome of the Division of Labor's determination of the worker's employment status.

We have reviewed the <u>Wacangan</u> case and can find no reference in the opinion for the proposition that the trial court lacks jurisdiction in a deportation matter while there is a labor claim pending in the Division of Labor. The court in <u>Wacangan</u> merely held that the Division of Labor had jurisdiction to entertain a labor claim by a nonresident worker against a de facto employer.

443

In this case, the Office of the Attorney General sought the deportation of the workers for the reason that they had remained in the Commonwealth after the expiration of their tourist entry permits without authorization. The Superior Court found each of the workers deportable "for overstaying his entry permit and remaining in the Commonwealth thereafter without lawful authority." Order at 2.

The workers filed their wage claims in the Division of Labor under both the Nonresident Workers Act and the Minimum Wage and Hour Act. The Division of Labor concluded that it had jurisdiction under the Minimum Wage and Hour Act.[2]

But the assertion of jurisdiction over the wage claims by the Division of Labor does not mean that the Superior Court loses jurisdiction to entertain a deportation proceeding at the same time. In this case, the exercise of jurisdiction by the Division of Labor over the wage claims does not divest the Superior Court's jurisdiction over the deportation matter.

## Due Process

While the Superior Court has jurisdiction over deportation matters, it must exercise such jurisdiction within the confines of the due process provision of our Constitution. The order requiring immediate deportation in this case does not afford due process to the workers.

---

[2]The issue before us is whether the Superior Court had jurisdiction over the deportation matter. We do not address the issue of whether the Division of Labor had proper jurisdiction over the wage claim. The basis for the deportation was the expiration of the tourist entry permits and is not related to the wage claim. Neither do we address the issue of whether such jurisdiction, if proper, is exclusive or primary.

We hold that an order of deportation, while a valid wage claim is pending, must be stayed until, at the very least, the worker is provided a meaningful opportunity to a hearing. To do otherwise would violate the due process provision of our Constitution.[3]

In _Office of the Attorney General v. Deala_, slip op. at 6, we held that

> In an administrative proceeding where a person's life, liberty, or property is at stake, Article I, § 5 of the Commonwealth Constitution requires, at a minimum, that the person be accorded meaningful notice and a meaningful opportunity to a hearing, appropriate to the nature of the case.

The property at stake for the workers in this case is each of their claims for unpaid wages. They must be allowed to have their wage claim heard. The opportunity to have their wage claim heard must be meaningful. In this particular case, it is not a meaningful opportunity to have a wage claim heard if it only means that a worker has to leave the island immediately and then return for brief visits, not to exceed a total of 90 days to pursue his or her claim. Due process cannot be satisfied in this case by placing a specified time limit on the opportunity for a hearing. Furthermore, the opportunity for a hearing cannot be meaningful when a worker is required to leave the island and then return for a hearing and it is undisputed that the worker has no financial

---

[3] Because our due process provision affords the same protection as does the due process clause of the U.S. Constitution, there is no need to address the issue of a violation of the due process clause of the U.S. Constitution. _Office of the Attorney General v. Deala_, slip op. at 6, n. 2; _Commonwealth v. Bergonia_, No. 91-001 (N.M.I. Mar. 19, 1992).

In addition, because we conclude that the trial court order requiring the immediate deportation of the workers violates the due process provision of our Constitution, we do not address their additional argument that their right to the equal protection of our laws was also violated by the order.

means to return. As we said in the <u>Deala</u> case, notice and a hearing must be "appropriate to the nature of the case."

### CONCLUSION

The trial court's order of deportation is **AFFIRMED** in part, and **REVERSED** in part.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Justice

Jesus C. Borja
Justice